UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

BARTHOLOMEW A. ROSELLI,

    PLAINTIFF,

v.

SENECA PARK ZOO SOCIETY, INC.

    DEFENDANT.

COMPLAINT
AND
DEMAND FOR JURY TRIAL

CIVIL ACTION

NO. _____

## NATURE OF ACTION

1. Bartholomew A. Roselli ("Plaintiff") brings this action to vindicate his rights under the Age Discrimination in Employment Act, 29 U.S.C. §621 *et seq.* (hereinafter "ADEA") and New York Human Rights Law, Executive Law §290 *et seq.* (hereinafter "NYSHRL").

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. § 2201.

3. This Court's supplemental jurisdiction of claims arising under NYSHRL is also invoked, pursuant to 28 U.S.C. § 1367.

4. Venue is appropriate in the Western District of New York since the allegations arose in this district and defendant conducts business in this district.

## PARTIES

### A. DEFENDANT

5. Defendant Seneca Park Zoo Society, Inc. ("Defendant") is a New York Not-For-Profit Corporation and has its principal place of business at 2222 Saint Paul Boulevard, Rochester, New York, 14621.

6. Defendant supports and promotes the Seneca Park Zoo by running educational programs, special events, marketing and public relations efforts, fundraising and food and gift operations.

### B. PLAINTIFF

7. At all times relevant Plaintiff was an employee of Defendant within the meaning of the ADEA and NYSHRL.

## FACTUAL ALLEGATIONS

8. Plaintiff was born on November 5, 1953.

9. Plaintiff has dedicated his entire 38-year professional career to the field of interpretation which involves the way information is communicated to visitors of museums and cultural institutions to facilitate an educational and enjoyable experience. To this day Plaintiff continues to provide community and professional service as well as publications and presentations in the field of interpretation.

10. Plaintiff began his employment with Defendant in 2009 as a Director of Education & Interpretation which involved serving as a public-facing leader of public programs and exhibits as the Seneca Park Zoo and managing about 25 people.

11. Mr. Roselli was Defendant's oldest Director by approximately 8 years.

*Mr. Roselli's Solid Job Performance*

12.     Throughout his eight years of employment with Defendant, Plaintiff was given solid performance evaluations. For example, Mr. Roselli received the following comments from the Defendant in his performance evaluations for the following years:

- 2009 -- "It has been a pleasure to get to know Bart during 2009. He is a real asset to the Zoo and as his understanding of the Zoo world increases and his ability to hone in on the natural abilities of his staff, we will continue to see great programs and interpretives comes of out of the Ed department – all led Bart! [sic] Thank you for joining our team!"

- 2010 -- "It has been a pleasure to work with Bart during 2010. He continues to be a real asset to the Zoo and he has better a grasp of what are the strengths and weaknesses of this facility. Thank you for being part of the team! Bart will receive a 3% raise for his work accomplished in 2010."

- 2011 -- "However, Bart is a treasured member of our team – he has a good work ethic, brings many new ideas and partners to the Zoo and the African exhibit will be an incredible experience in part due to his guidance and effort."

- 2012 -- "Bart is very enthusiastic and willing to listen to new ideas from outside colleagues and other staff. He wants to elevate their level of understanding about educating visitors in this facility which is great in the long term. Overall, the education department exceeded their financial goals for 2012, which shows me that Bart has made that a priority. Having a new exhibit certainly helped all departments with their financial goals as well."

- 2013 -- "With Bart taking the time management course last spring and being more focused on his staffs' achievements or lack thereof. I have seen improvements in his overall effectiveness as a Director, I still think he needs to stay on top of the projects that he has prioritized but great strides have been made. He is a true asset to the Zoo for he brings seasoned perspectives of NFP management and is willing to continuously review issues from a different perspective. That balance is in the Directors decision making is very important. Bart will receive a 3% raise for 2013 and he received a $2,000 bonus for work done in 2013."

- 2014 -- "I think Bart can be creative when problems arise, suggesting solutions rather than simply presenting the problem to me and looking for me to solve it. Very helpful." Mr. Roselli received a 3% raise in 2014.

- 2015 -- Mr. Roselli receives a 2.5% raise and received a majority marks

      close to "meeting expectations".

- 2016 -- Mr. Roselli receives a 1.5% raise and received a majority of "meeting expectations" on his evaluation.

13.     Like any employee Defendant identified areas of improvement for Mr. Roselli but on balance his experienced contributions far outweighed his shortcomings.

### *Defendant's Discriminatory Activities*

14.     Mr. Roselli started to experience discriminatory activities, specifically based on his age under the Defendant's new leadership of Executive Director Ms. Pamela Reed-Sanchez.

15.     Ms. Reed-Sanchez tolerated Defendant's employees including Charles Levengood, the Director of Development and Tom Snyder making fun of Mr. Roselli because of his age. For example, Mr. Roselli was called the "old man" at multiple leadership meetings. Ms. Reed-Sanchez tolerated these ageist comments lodged against Mr. Roselli even after he expressed that he was hurt by these discriminatory comments. Mr. Roselli would respond in the meetings by saying "ouch, that hurt" but tolerated being called the "old man" because he did not want to be retaliated against by Ms. Reed-Sanchez given she favored younger people.

16.     Moreover, Mr. Roselli recalls Ms. Reed-Sanchez asking him when he would retire. At the time Mr. Roselli was concerned because he remembered his older coworker Karen Panosian was forced to retire by Ms. Reed-Sanchez well before she was ready to retire.

17.     In 2015, Ms. Reed-Sanchez demoted Plaintiff and stripped him of his interpretation responsibilities. Plaintiff's new title was to be Director of Education & Visitor Studies and he would now be responsible for leading curriculum-based programs, volunteer management and visitor research and evaluation.

18.     Defendant specifically Ms. Reed-Sanchez decided that Mr. Roselli's interpretation responsibilities would be given to another younger employee. Specifically, Mr. Roselli's

interpretation duties were transferred to Tom Snyder who was in his 30s and did not have the requisite education, background or experience and was unqualified to fulfill the Director's interpretation duties. Defendant created a new position for Tom Snyder called Director of Programming and Conservation Action.

19. Thereafter, Tom Snyder was allowed with Ms. Reed-Sanchez's permission to openly ridicule Mr. Roselli based on the misconception that Mr. Roselli was not adept with technology due to his age. Mr. Roselli requested training for the new staff management software from Ms. Reed-Sanchez to get up to speed but was told to just teach himself or go on-line. While Mr. Snyder was frequently permitted by Ms. Reed-Sanchez to spend significant time with local software and technology companies to familiarize with the latest technological advances.

20. On July 24, 2017, Ms. Reed-Sanchez emailed Mr. Roselli a three-page list of alleged deficiencies in his performance and gave him a 48-hour ultimatum to either agree to leave his employment within 60 days but publicly lie and say he decided to retire or resign or to be terminated immediately.

21. The performance issues identified by Ms. Reed-Sanchez were grossly inaccurate and based on Mr. Roselli's experience were not terminable offenses. For instance. Ms. Reed-Sanchez cited Mr. Roselli for failing to notify his colleagues and staff that he was taking a vacation. Yet, Defendant's own emails would clearly demonstrate that Mr. Roselli emailed his team the details of his time away from work for a family vacation and requested that they contact him if needed.

22. Moreover, Mr. Roselli was surprised to receive this memo for Ms. Reed-Sanchez for two reasons. First, most of the performance issues identified in the memo had never previously been brought to his attention. Second, he received the memo on his first day back from vacation.

Indeed, Ms. Reed-Sanchez told him after delivering the memo "I bet you weren't expecting this your first day back from vacation."

### *Defendant Retaliates Against Mr. Roselli*

23. Mr. Roselli responded via email to Ms. Reed-Sanchez's ultimatum that he believed that he was being discriminated against because of his age and requested that Defendant conduct an investigation.

24. Ms. Reed-Sanchez responded by having Mr. Roselli walked out of the facility the very same day. As he was being walked out, Mr. Roselli asked Ms. Reed-Sanchez why she was doing this and she responded only "You gave me no choice".

25. Defendant ignored its own internal policies and practices in terminating Mr. Roselli. As an experienced director-level manager Mr. Roselli was fully familiar with and informed of these practices which called for underperforming staff to be first issued verbal and written and if no improvements are seen then a Performance Improvement Plan (PIP) would be drafted and presented to the staff person in question. Here, Mr. Roselli never received a PIP.

26. Since Mr. Roselli was demoted in 2015 and Mr. Snyder took over his interpretation duties there have been a major increase in complaints and missed appointments due to Mr. Snyder's inexperience and inattention. Specifically, Defendant's adult programs, on-site interpreters, zoo mobile and butterfly gardens are severely lagging in revenue as compared to when they were under Mr. Roselli's direction. Further, Mr. Snyder's Center for Biodiversity Exploration – proposed interactive video game installation – was more than 12 months late. Indeed, leaders at the Seneca Park Zoo have publicly stated that he is "… the poorest project manager I have ever worked with." However, Mr. Snyder has not been subject to discipline or termination.

27. Several weeks after his termination, Defendant briefly met with Mr. Roselli to

discuss his age discrimination complaint but ultimately took no remedial action. Rather Defendant proceeded to replace Mr. Roselli with a significantly younger employee.

28. Defendant terminated Mr. Roselli because of his age and/or in retaliation that he complained of age discrimination.

29. Due to the willful conduct of the Defendant, Plaintiff has lost his employment has lost pay and other benefits and has suffered great emotional distress.

30. Defendant discriminated against Mr. Roselli on the basis of his age with regard to his termination and the terms, conditions, and privileges of employment.

***Division Issues Probable Cause Determination***

31. Thereafter, Plaintiff filed a charge of discrimination and retaliaton with the New York State Division of Human Rights ("Division") and the United States Equal Employment Opportunity Commission ("EEOC") on or about August 18, 2017.

32. Defendant responded to Mr. Roselli's complaint by submitting a robust response including extensive exhibits.

33. Despite Defendant's voluminous response, on February 5, 2018, the Division issued it Determination After Investigation finding Probable Cause Existed that Defendant engaged in unlawful age discrimination and retaliation. The Division's basis for the probable cause determination relied upon the following:

- Whether Mr. Roselli was afforded the same opportunity to improve his performance as a younger colleague because of his age.

- Whether Defendant took prompt and effective action to address Mr. Roselli's age discrimination complaint.

- Whether Mr. Roselli's age was a factor in Defendant's decision to terminate his employment.

34. On June 25, 2018 the EEOC mailed Mr. Roselli a notice of right to sue, informing Mr. Roselli could file a complaint in federal court to redress the violations of his rights.

### FIRST CAUSE OF ACTION

*Age Discrimination Employment Act – Age Discrimination*

35. Plaintiff realleges the above paragraphs as if fully restated herein.

36. Through Defendant's action and inactions described above Defendant violated its obligations under the ADEA, and is liable to plaintiff.

### SECOND CAUSE OF ACTION

*Retaliation in Violation of Age Discrimination in Employment Act*

37. Plaintiff realleges the above paragraphs as if fully restated herein.

38. The ADEA prohibits retaliation against employee for complaining about age discrimination. Plaintiff engage in protected activity under the ADEA by complaining about his treatment at work, Plaintiff was terminated in retaliation for his complaint.

### THIRD CAUSE OF ACTION

*New York State Human Rights Law – Age Discrimination*

39. Plaintiff realleges the above paragraphs as if fully restated herein.

40. Defendant through its agents engage in a pattern of unlawful age discrimination and failed to take remedial action with regards to Plaintiff's complaint of discrimination by singling out Plaintiff in regards to his job performance, when in fact Plaintiff's job performance was satisfactory or better than those employees who were substantially younger than Plaintiff, and eventually terminating Plaintiff in violation of the New York State Human Rights Law, Executive Law §290 *et seq.*

**FOURTH CAUSE OF ACTION**

*Retaliation under New York State Human Rights Law §290 et seq.*

41. Plaintiff realleges the above paragraphs as if fully restated herein.

42. The NYHRL prohibits retaliation against employee for complaining about age discrimination. Plaintiff engaged in protected activity under the NYHRL by complaining about his treatment at work, Plaintiff was terminated in retaliation for his complaint.

**WHEREFORE**, Plaintiff requests the following relief:

(a) A declaration that Defendant's conduct complained of herein violated his rights as secured by the ADEA and NYHRL.

(b) A permanent injunction to Defendant its officers, management, personnel, employees, agents, attorneys, successors and assigns and those acting in concert therewith from any retaliatory conduct violating any of Plaintiff's rights as secured by ADEA and NYHRL.

(c) Equitable relief of all back pay and benefits up to the date of reinstatement.

(d) Reinstatement of the Plaintiff to employment with Defendant or, in the alternative an award to the Plaintiff of front pay, including all the compensation and value of the benefits of employment that he would have been entitled to had he not been terminated, for a period of time after judgment that the Court deems just and proper.

(e) An award of compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses under the ADEA and NYHRL.

(f) An award of punitive damages.

(g) An award of liquidated damages.

(h) An award of pre-judgment interest.

(i) All costs, expenses, disbursements, expert witnesses feed and attorney's fee in prosecuting the action.

(j) An award of any and all other economic loss.

(k) Such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact.

Dated: September 11, 2018

                              CORDELLO LAW PLLC

By: _____
      Justin M. Cordello, Esq.
      *Attorney for Plaintiff*
      95 Allens Creek Road
      Bldg. 2, Suite 215
      Rochester, New York 14618
      Telephone: (585) 857-9684
      justin@cordellolaw.com